IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　Plaintiff<br><br>　　　　v.<br><br>66.84 ACRES OF LAND, MORE OR<br>LESS, SITUATE IN SOUTH NEWTON<br>AND SOUTHAMPTON TOWNSHIPS,<br>CUMBERLAND COUNTY, COMMONWEALTH<br>OF PENNSYLVANIA,<br>　　　　　　and<br><br>TUMBLING RUN GAME PRESERVE,<br>　　　　　　and<br><br>UNKNOWN OWNERS<br>　　　　　　Defendants | CIVIL NO. 1:CV-00-1763<br>(Rambo, J.)<br>(Smyser, M.J.)<br><br><br>Tract 372-01 |

PLAINTIFF UNITED STATES' BRIEF IN SUPPORT OF
ITS MOTION IN LIMINE

I.   INTRODUCTION

This matter is scheduled for trial in July 2002. In connection with that trial date, the Court has directed that motions in limine be filed on or before June 3, 2002. The United States has filed a motion in limine and this brief is filed in support of that motion.

II.  FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2001, the United States, at the request of the Secretary of the Department of Interior, instituted the instant condemnation proceeding to acquire in fee 66.84 acres of land in South Newton and Southampton Townships, Cumberland County, Pennsylvania. Defendant Tumbling Run Game Preserve (hereinafter

"TRGP") owns the subject property.[1] The United States is acquiring the 66.84 acres of land "for the proper administration, preservation, and development of the Appalachian National Scenic Trail for the benefit and enjoyment of the public." Compl., ¶ 3.

The Complaint alleges that authority for the taking is found at 40 U.S.C. § 257 and 16 U.S.C. § 1241 et seq. Title forty, section 257, is the statute which provides the Secretary of the Interior, and other federal officers, with the general authority to acquire land for public use. See 40 U.S.C. § 257. Title sixteen, section 1241 et seq., otherwise known as the National Trails Act, provides the Secretary with the authority to acquire the lands which comprise the Appalachian Trail (the Trail).

On January 12, 2001, TRGP filed its Answer to the Complaint and Counterclaim. On January 19, 2001, TRGP filed an Amended Answer and Counterclaim. In its response, TRGP did not deny the statutory authority for the instant condemnation proceeding. See Compl. ¶ 2; Amended Ans., ¶ 2. TRGP does dispute that the land is required for the proper administration of the Trail for a variety of reasons. Amended Ans., ¶ 3.

TRGP also asserted several affirmative defenses. First, TRGP claimed that the Secretary failed to negotiate to acquire the

---

[1] Due to their potential interest in the property, on February 22, 2001, the United States filed an Amended Complaint adding the Cumberland County Assessment Office, the Commonwealth of Pennsylvania, and the Pennsylvania Department of Revenue, Lien Section, to Schedule B.

2

land prior to filing this complaint in condemnation and/or failed to exercise his judgment that all reasonable efforts to acquire the land by negotiation had failed.  TRGP asserted that by this alleged failure, the Secretary exceeded his statutory authority and/or acted arbitrarily, capriciously, and in bad faith. Amended Ans. ¶¶ 9, 25(e), 25(f), 27(a), (c).

Second, TRGP alleged that in seeking to acquire 66.84 acres the Secretary exceeded his authority and/or acted arbitrarily, capriciously and in bad faith by failing to exercise his judgment as to the minimum amount of land necessary to provide passage across the trail.  Id. ¶¶ 9(c), 25(g); 27(d), 27(g).

Finally, TRGP also asserted a counterclaim for declaratory relief under 28 U.S.C. § 2201 asking the Court to declare that the Secretary's actions prior to and in the bringing of the instant action exceeded his statutory authority.

The United States filed a motion to strike the affirmative defenses and to dismiss the counterclaim, arguing that the affirmative defenses and counterclaim were improperly asserted for several reasons.  First, the sole issue to be tried in a condemnation case is the issue of just compensation.  Once the Court determines that the United States has statutory authority to bring the case, and that its proceeding is for a public purpose, no further review is permitted.  Whether further negotiation prior to the institution of condemnation proceedings

3

is warranted, and the determination of the amount of land to be acquired are determinations solely within the Secretary's discretion. TRGP's disagreement over the manner in which the Secretary exercised his discretion with respect to these issues does not constitute a valid defense to the taking.

The Court granted the motion of the United States by order dated June 14, 2001. In so doing, the court adopted the Report and Recommendation of Magistrate Judge Smyser. It is the position of the United States that the only issue remaining to be tried is the amount of just compensation due to the landowner and the United States seeks, by this motion, to preclude the landowner from revisiting these issues.

## III. ARGUMENT

### A. FEDERAL LAW CONTROLS IN THIS EMINENT DOMAIN ACTION

Federal condemnation actions are essential functions to the federal sovereign. United States v. 93.970 Acres, 360 U.S. 328, 332 (1959); Kohl v. United States, 91 U.S. 367, 371 (1875). The essential element of a condemnation action, the measure of compensation, is "grounded upon the Constitution of the United States." United States v. Miller, 317 U.S. 369, 380 (1943). Due to its essential nature and constitutional underpinnings "federal law rules" in determining the sole issue in condemnation actions, just compensation. United States v. 93.970 Acres, 360 U.S. at 332-333, citing Bank of America Nat. T. & S. Assn. v. Parnell,

352 U.S. 29 (1956); Clearfield Trust Co. v. United States, 318 U.S. 363 (1943); United States v. Miller, 317 U.S. at 380; Kohl v. United States, 91 U.S. at 374; Lewis v. United States, 200 F.2d 183, 185-186 (9th Cir. 1952), cert. den. 345 U.S. 907. Because of the federal function served by this action, federal law must be applied.

B.  **Background Law**

**Protection of the Appalachian Trail**

The Appalachian Trail is a hiking trail which extends from Mount Katahdin, Maine to Springer Mountain, Georgia. While portions of the trail run through federal lands, in some areas it passes over privately owned land. See e.g. United States v. 13.10 Acres of Land, 737 F. Supp. 212, 213 n.1 (S.D.N.Y. 1990).

Until the 1968 enactment of the National Trails Act, 16 U.S.C. §§ 1241-51, the Trail went unregulated for decades. See 13.10 Acres, 737 F. Supp. at 215. The overall purpose of the Trails Act is "to provide for the ever-increasing outdoor recreation needs of an expanding population and in order to promote the preservation of, public access to, travel within, and enjoyment and appreciation of the open-air, outdoor areas and historic resources of the Nation." 16 U.S.C. § 1241(a). The Trails Act prescribes three types of trails: national recreation, national scenic and national historic. See 16 U.S.C. § 1242. The Appalachian Trail is designated a national scenic trail. 16

U.S.C. § 1244(a)(1).

The Trails Act provides that "[i]nsofar as practicable, the right-of-way for [the Appalachian Trail] shall comprise the trail depicted on the maps identified as 'Nationwide Systems of Trails, Proposed Appalachian Trail, NST-AT-101-May 1967.'" 16 U.S.C. § 1244(a)(1). Once the path of the Trail has been published in the Federal Register, the Secretary may change the path of the Trail with the concurrence of the Director of the National Park Service "upon a determination that: (i) such a relocation is necessary to preserve the purposes for which the trail was established, or (ii) the relocation is necessary to promote a sound land management program in accordance with established multiple-use principles: *Provided* That a substantial relocation of the rights-of-way for such trail shall be by Act of Congress." 16 U.S.C. § 1246(b). The Secretary is authorized to acquire lands which are part of a national scenic trail but which are outside the boundaries of federal land through voluntary sales, other agreements or condemnation. See e.g. 16 U.S.C. §§ 1246(e),(f),(g).

In 1978, Congress amended the Trails Act to increase the amount of land the Secretary was authorized to acquire to 125 acres of land per mile of trail. 16 U.S.C. § 1246(g). This amendment was the product of hearings conducted by the House Committee on Interior and Insular Affairs. See 13.10 Acres, 737

F. Supp. at 214. The Committee noted the increasing threat to the Trail's protection, and stated that experience had shown the need to increase funding available for Trail acquisition and to acquire a sufficiently wide corridor to protect Trail values.[2]

---

[2] The relevant portion of the Committee's Report is the following:

At the time of the enactment of the National Trails System Act in 1968, Congress recognized the unique recreational opportunities afforded by extended trails of this type. It was also recognized that changing land uses and increase in pressures for development were a growing threat to maintaining a continuous trail route. The act therefore provided for a Federal responsibility to protect the trail, including the authority to acquire a permanent right-of-way. Since the passage of the original act, several steps have been taken to further protect the trail. The U.S. Forest Service has pursued a program of land acquisition to secure the trail route within the national forests. Several states have taken the initiative to acquire a corridor for the trail, frequently making use of matching grants from the land and water conservation fund.
Unfortunately, these measures alone have not been enough to protect the trial. Over 600 miles of the trail remain in private hands and changes in ownership and increasing pressures for development pose threats to the continuity of the trail in numerous instances. Almost 200 additional miles of the trail are now located along roads, providing no real hiking experience, but only a link between disconnected segments of the trail. Some of these miles of road designation are the result of the trail having been forced off of an area of land due to a change in use or ownership.
The Department of the Interior has recognized this increasing threat to the trail, and is preparing a detailed acquisition plan to carry out the mandate of the 1968 act to protect the trail. Experience with the trail has demonstrated, however, that additional authority is needed to insure the acquisition of a corridor wide enough to protect trail values, and an increase in the funding authorized for the trail will be required to purchase a sufficient route through the areas which are now unprotected.

H.R.Rep. No. 734, 95th Cong., 1st Sess. 3-4 (1977) (emphasis added). The report of the Senate echoes these concerns. S.Rep.

The Secretary's authority to acquire privately owned land over which the Trail passes, is found at 16 U.S.C. § 1246(g). Section 1246(g) states:

> The appropriate Secretary may utilize condemnation proceedings without the consent of the owner to acquire private lands or interests therein pursuant to this section only in cases where, in his judgment, all reasonable efforts to acquire such lands or interests therein by negotiation have failed, and in such cases he shall acquire only such title as, in his judgment, is reasonably necessary to provide passage across such lands: *Provided*, That condemnation proceedings may not be utilized to acquire fee title or lesser interests to more than an average of one hundred and twenty-five acres per mile.

16 U.S.C. § 1246(g). In the instant case, the appropriate Secretary is the Secretary of the Department of the Interior.

**Background Law - Issues Cognizable in Land Condemnation Proceedings**

The only questions subject to judicial review in a condemnation proceeding is whether the taking is statutorily authorized and whether the purpose for which the property is being taken is a Congressionally authorized public use. See Berman v. Parker, 348 U.S. 26, 32-33 (1954); United States v. 67.59 Acres, 415 F. Supp. 544, 548 (M.D. Pa. 1976) (Herman, J.). See also Hawaii Housing Auth. v. Midkiff, 467 U.S. 229 (1984). Courts may not review the necessity of the taking, nor may they entertain "broadside allegations that the purported public use is

---

No. 636, 95th Cong., 1st Sess. 3-4 (1978), U.S.Code Cong. & Admin. News 1978, pp. 456, 457, 458.

merely a pretense to explain arbitrary official conduct absent specific allegations of egregious bad faith." 67.59 Acres, 415 F. Supp. at 548; see also United States v. 6,321 Acres, 479 F.2d 404 (1st Cir. 1973). "[W]here . . . the exercise of eminent domain power is rationally related to a conceivable public purpose," the taking must be upheld. Hawaii Housing Auth., 467 U.S. at 241. Indeed, "deference to the legislature's public use determination is required until it is shown to involve an impossibility." Id. (quotation and citation omitted).

In addition, courts are not permitted to "oversee the choice of the boundary line nor to sit in review on the size of a particular project area." Berman, 348 U.S. at 35. A party complaining of bad faith must assert facts, rather than conclusions, with such facts demonstrating "actual malevolence" by the officer toward the complaining party. United States v. 49.79 Acres of Land, 582 F. Supp. 368, 373 (D. Del. 1983).

### C. JUST COMPENSATION IS MEASURED BY THE FAIR MARKET VALUE IN THE OPEN MARKETPLACE

"The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation." United States v. Miller, 317 U.S. at 373; Almota Farmers Elevator & Whse. Co. v. United States, 409 U.S. 470, 473 (1973). Just compensation has come to mean "the full and perfect equivalent in money of the property taken." United States v.

9

<u>Miller</u>, 317 U.S. at 373, <u>citing</u> <u>Monongahela Navigation Co. v. United States</u>, 148 U.S. 313, 326 (1893). That is, just compensation is recognized as "the value of the interest taken." <u>United States v. Petty Motor Co.</u>, 327 U.S. 372, 377 (1946); <u>Almota Farmers Elevator & Whse. Co. v. United States</u>, 409 U.S. at 473.

"To determine such monetary equivalence, the Court early established the concept of 'market value': the owner is entitled to the fair market value of his property at the time of the taking." <u>Almota Farmers Elevator & Whse. Co. v. United States</u>, 409 U.S. at 474, <u>citing</u> <u>New York v. Sage</u>, 239 U.S. 57, 61 (1915). Fair market value "denotes what 'it fairly may be believed that a purchaser in fair market conditions would have given,' or, more concisely, 'market value fairly determined.'" <u>United States v. Miller</u>, 317 U.S. at 374, <u>quoting</u> <u>New York v. Sage</u>, 239 U.S. at 61; <u>Olson v. United States</u>, 292 U.S. 246, 255 (1915). "And this value is normally to be ascertained from 'what a willing buyer would pay in cash to a willing seller.'" <u>Almota Farmers Elevator & Whse. Co. v. United States</u>, 409 U.S. at 474, <u>quoting</u> <u>New York v. Sage</u>, 239 U.S. 61. The bottom line is that the government should not be placed in any better or worse position than any other purchaser in the open marketplace. <u>Olson v. United States</u>, 292 U.S. 246, 258 (1934).

## D. EVIDENCE OF THE SITE SELECTION PROCESS MUST BE EXCLUDED

The focus of just compensation is upon the market value of the property taken, "not the value to the owner for his particular purposes or to the condemner for some special use." United States v. Petty Motor Co., 327 U.S. at 377; United States v. WeyerhauserCo., 538 F.2d 1364, 1366-1367 (9th Cir. 1976). "'[M]arket value' does not fluctuate with the needs of condemner or condemnee but with general demand for the property." The landowner is to be compensated for his loss not for any gain to the government. United States v. Twin City Power Co., 350 U.S. 222, 228 (1956), reh. den. 350 U.S. 1009, citing United States v. Chandler-Dunbar Co., 229 U.S. 53, 76 (1913). That is, "the owner is to receive no more than indemnity for his loss, his award cannot be enhanced by any gain to the taker." United States v. Miller, 317 U.S. at 375; United States v. Twin City Power Co., 350 U.S. at 228; United States v. Cors, 337 U.S. 325, 333 (1947). By excluding any value or gain to the government in a condemnation action, the Supreme Court has recognized that

> strict adherence to the criterion of market value may involve inclusion of elements which, though they affect such value, must in fairness be eliminated in a condemnation case, as where the formula is attempted to be applied as between an owner who may not want to part with his land because of its special adaptability to his own use, and a taker who needs the land because of its peculiar fitness for the taker's purposes. These elements must be disregarded by the fact finding body in arriving at "fair" market

> value.
>     Since the owner is to receive no more
> than indemnity for his loss, his award cannot
> be enhanced by any gain to the taker.
> [footnote omitted] Thus, although the market
> value of the property is to be fixed with due
> consideration of all its available uses,
> [footnote omitted] its special value to the
> condemner as distinguished from others who
> may not possess the power to condemn, must be
> excluded as an element of market value.
> [footnote omitted].

United States v. Miller, 317 U.S. at 375. Defendants may seek to use the evidence of elements of the site selection process to show a "strategic value" which is "not based upon the actual market value for all reasonable uses and demands, but the possible worth of the property to the Government." United States v. Chandler-Dunbar Co., 229 U.S. at 80. Strategic value, or "the value of the property to the Government for its particular use is not a criterion [of just compensation]. The owner must be compensated for what is taken from him, but that is done when he is paid its fair market value for all available uses and purposes." Id. at 81. The rule excluding evidence as to government need or gain from the acquisition has "been developed to ensure that the Government, in pursuing public benefits through the power of eminent domain, is not forced to overcompensate private property-holders." United States v. Cors, 337 U.S. 325, 332-334 (1949); United States v. Weyerhauser Co, 538 F.2d 1363, 1366-1367 (9th 1976) cert den. 429 U.S 929. This is accomplished by not compensating the landowner for "special

value to the taker, or value created solely by the takers's demand for the property", but by compensating the landowner the fair market value of the property taken. <u>United States v. Cors</u>, 337 U.S. at 332-334. The value caused by government's demand or need is not true market value as established by what a willing buyer would pay a willing seller under fair market conditions. The government has participated in the market as a purchaser with its special and pressing demand, and in so doing has distorted the market; without the Government's participation as a purchaser or condemner, there would be no market reflecting this special or unique demand. Since value is premised upon true market conditions, any distortions to the market are not relevant to the issue of fair market value, the true measure of just compensation and an extraordinary waste of judicial resources.

Whatever the reasons upon which the government based its decision to acquire this property <u>vis-a-vis</u> any other property is not a market element which would be considered between a willing buyer and willing seller under market conditions. "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market...." <u>Olson v. United States</u>, 292 U.S. at 258. "As just compensation includes no increment resulting from the taking, [defendants are] not

entitled to elements of value arising from the prospect that the Government would acquire the" subject property. Id. at 261.

Finally, the cost in time and resources which would be consumed by the introduction of the site selection process is considerable. This entire line of evidence is a pure waste of time, when, in fact, the only issue is the fair market value of the subject property. United States v. Reynolds, 397 U.S. 14, 20 (1970).

## IV. CONCLUSION

All of the possible challenges to the taking have been addressed in the previously resolved motion. The only issue remaining is that of just compensation. Based upon the foregoing, the United States respectfully requests that the Court grant the motion in limine and preclude the defendant from introducing any evidence of site selection, alternative trail location, or any other issue raised by the now stricken affirmative defenses.

Respectfully submitted,

THOMAS A. MARINO
UNITED STATES ATTORNEY

ANNE K. FIORENZA
Assistant U.S. Attorney
228 Walnut Street
Harrisburg, PA 17108
(717) 221-4482

Dated: June 3, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff<br><br>       v.<br><br>66.84 ACRES OF LAND, MORE OR<br>LESS, SITUATE IN SOUTH NEWTON<br>AND SOUTHAMPTON TOWNSHIPS,<br>CUMBERLAND COUNTY,<br>COMMONWEALTH<br>OF PENNSYLVANIA,<br>            and<br><br>TUMBLING RUN GAME PRESERVE,<br>            and<br><br>UNKNOWN OWNERS<br><br>            Defendants | CIVIL NO. 1:CV-00-1763<br>(Rambo, J.)<br>(Smyser, M.J.)<br><br><br><br>Tract 372-01 |

### CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on _June 3_, 2002, she served the attached

PLAINTIFF UNITED STATES' BRIEF IN SUPPORT OF
ITS MOTION IN LIMINE

by placing said copies in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Larry Keating
Growth Capital Resources, LLC
80 Abbeyville Road
Lancaster, PA 17603

KIMBERLY A. STEVENS
Paralegal Specialist