ORIGINAL

FILED
HARRISBURG, PA

JUN 1 3 2002

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1: CV-00-1763 |
| Plaintiff, | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Smyser) |
| 66.84 ACRES OF LAND, etc., | : | JURY TRIAL DEMANDED |
| Defendants | : | |

**DEFENDANT TUMBLING RUN GAME PRESERVE'S
MEMORANDUM IN OPPOSITION
TO THE UNITED STATES' MOTION IN LIMINE TO EXCLUDE EVIDENCE**

Defendant Tumbling Run Game Preserve ("Tumbling Run") hereby opposes the United States' Motion in Limine to exclude certain categories of evidence from the trial of this case.

1. **The Statute**

The National Trails System Act, *16 USC Chapter 27*, establishes certain requirements that federal agencies must follow in order to acquire land by force of condemnation. Section 1246 requires agencies to comply with the following in order to pursue condemnation:

(a) (2) ...[T]he appropriate Secretary shall select the rights-of-way for national scenic and national historic trails ...:Provided, That in selecting the rights-of-way full consideration shall be given to minimizing the adverse effects upon the adjacent landowner or user and his operation....

(g) ... The appropriate Secretary may utilize condemnation proceedings without the consent of the owner to acquire private lands or interests therein pursuant to this section only in cases where, in his judgment, all reasonable efforts to acquire such lands or interests therein by negotiation have failed, and in such cases he shall acquire only such title as, in his judgment, is reasonably necessary to provide passage across such lands: Provided, That condemnation proceedings may not be utilized to acquire fee title or lesser interests to more than an average of one hundred and twenty-five acres per mile....

This case is a condemnation proceeding. The initiation of a condemnation proceeding is constrained by the statute and may only be brought after the completion by the Secretary, here in the guise of the National Park Service ("NPS"), of the following activities:

1. Giving full consideration to minimizing the adverse effects upon the adjacent landowner, in this case, Tumbling Run Game Preserve ("TRGP").
2. Engaging in all reasonable efforts to acquire such lands by negotiations that have failed.

Once the condemnation proceeding has been brought, the outcome of the proceeding is constrained by the statute and NPS may only acquire such title:

1. As, in its judgment, is reasonably necessary to provide passage across such lands.
2. But no more that 125 acres per mile on average.

**2. The Magistrate's Report and Recommendation**

The United States Magistrate issued a Report and Recommendation ("Recommendation"), subsequently adopted on June 14, 2001 by this Court, recommending that TRGP's affirmative defenses be stricken and its counterclaim be dismissed.

Per the Recommendation (p.4), the Magistrate described TRGP's defenses as follows:

- NPS should have selected a trail routing less intrusive upon TRGP's interests.

- NPS should have given more reasons for its route selection.

- NPS should have negotiated further with TRGP about these issues and concerns.

- NPS should not have resorted to condemnation here because agency guidelines provide for a resort to condemnation as a last resort measure.

Per the Recommendation (p.6), the Magistrate described TRGP's counterclaim as follows:

- Only a declaratory judgment would specify the NPS conduct that was improper, preventing NPS from relying on the same conduct in a refiled case.

TRGP agrees with the United States that issues directly addressed by the Magistrate are precluded from being tried. The Magistrate, however, did not address two important issues, discussed below. These issues remain as triable issues (in addition to the value issue).

### 3. Remaining Issues for Trial

#### A. Full Consideration

The statute mandates that NPS give *full consideration* to minimizing the adverse effects upon TRGP. The *full consideration* section of the statute precedes the condemnation section. Its position in the statute is not an accident and makes clear the Congressional intent that *full consideration* must precede condemnation both as a chronological as well as a legal requirement.

If NPS has not given *full consideration* to this matter, it may not proceed to condemnation. It may not proceed because it has failed to fulfill the condition precedent established by Congress – that it must properly select the right-of-way that is the very subject of the condemnation.

The issue of the *full consideration* given by NPS (or not) in this case was not part of the Magistrate's Recommendation. The Recommendation addressed only the <u>outcomes</u> of whatever consideration NPS may have given anything, but not the consideration itself. The outcomes were trail routing, reasons for route selection, further negotiations and improper resort to condemnation.

One can infer that some consideration was given to certain matters from the fact that NPS has given some reasons for its condemnation (their adequacy is disputed by TRGP). But one cannot infer from anything in the record thus far that *full consideration* was given to this particular statutorily mandated matter.

*Full consideration* is highly relevant in a setting where the government can take property by force. It is virtually all that stands between a citizen who earned his property and an arbitrary and capricious bureaucrat who believes he can take whatever he wants. Congress understood that a citizen is powerless in a condemnation proceeding because courts are required to pay great deference to the choices of condemners, who like to say that "the only issue is price" and then customarily offer a fraction of market value unless the citizen has the temerity to take them to court. Recognizing the plight of citizens in condemnations, Congress did the right thing in requiring the condemner to give *full consideration* to the citizen's rights before the lop-sided condemnation proceedings begin.

NPS' course of conduct show that little or no consideration was given by NPS to minimizing the adverse effects upon TRGP, and that the only considerations were the extent that TRGP would resist and its connections, if any, in Congress.

The irony is that TRGP has always been a friend of the Appalachian Trail, has always welcomed the Trail on its property, and will continue to welcome Trail hikers on its property in

the future. The Trail has never been in danger in this proceeding. TRGP offered to <u>donate</u> all the land that was needed for the Trail. The issue is not the protection of the Trail on TRGP property but rather the exaggerated taking by NPS.

This issue is not a matter of affirmative defense but rather one of entitlement. The burden is on NPS to establish that this condemnation was properly brought and that it is entitled to pursue it. TRGP will show that NPS never <u>needed</u> to bring this proceeding in the first place in order to protect the Trail, and if it is correct about what resides in NPS files, it will show that NPS was never <u>allowed</u> to bring this proceeding in the first place.

### B. Reasonably Necessary to Provide Passage

The statute limits the quantity of land NPS may condemn in two ways: (1) A limit related to average acreage, and (2) a limit related to passage. How much land the Trail needs to provide passage is a judgment call based on many factors, e.g., adjacent land uses. But the statute requires that the judgment be made. And the judgment cannot be arbitrary or capricious – it must have been made on passage issues and not on other issues.

The TRGP defenses that are described by the Recommendation did not include the issue of quantity. The Recommendation indirectly alluded to quantity in its reference to *United States v. 16.03 Acres*, 26 F.2d 349 (2d Cir. 1994), stating that the determination of what land is reasonably necessary for the trail within the statutory limits is the province of the Secretary alone. But the Recommendation did not address those statutory limits and did not rule out any issues regarding those limits.

The passage issue is part of NPS' affirmative burden at trial. NPS' course of conduct shows that its intent from the beginning was to take more acreage than was reasonably necessary for passage, and that its judgment, if exercised, included issues other than passage issues. The Trail has resided on TRGP property for the better part of a century in complete safety and security as a three-feet wide footpath. It is inconceivable that every bit of the 66.84 acres demanded by NPS is required for the Trail that never required nearly so much acreage before.

WHEREFORE, Defendant Tumbling Run respectfully requests this Court to limit the United States' Motion in Limine to those issues directly ruled upon in the Recommendation and to allow evidence on the issues of full consideration, passage-related quantity and all other remaining and relevant issues.

Respectfully submitted,

June 11, 2002

_____
Lawrence J. Keating
Attorney for Tumbling Run Game Preserve
80 Abbeyville Road
Lancaster, PA 17603
717/390-0377

## CERTIFICATE OF SERVICE

I, Lawrence J. Keating, certify that I have this day served the attached Opposition to the United States' Motion in Limine to Exclude Evidence by U.S. Mail, first class postage prepaid, upon the following:

>Anne K. Fiorenza, Esq.
>Assistant U.S. Attorney
>P.O. Box 11754
>Harrisburg, PA  17108

>*(signature)*
>Lawrence J. Keating
>Attorney for Tumbling Run Game Preserve
>80 Abbeyville Road
>Lancaster, PA  17603
>717/390-0377

June 11, 2002